**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Rahul Manchanda, | No. 16-cv-3350 (JPO)(JCF) |
| Plaintiff, | |
| -against- | |
| Google, Yahoo, and Microsoft Bing, | |
| Defendants. | |

**DEFENDANT MICROSOFT CORPORATION'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    FACTUAL BACKGROUND ................................................................... 2

     A.     The Plaintiff ................................................................................. 2

     B.     Microsoft's Bing™ Search Engine ............................................. 2

     C.     Plaintiff's Prior State Court Action............................................. 3

     D.     The Present Action....................................................................... 5

III.   ARGUMENT ........................................................................................ 7

     A.     Collateral Estoppel Bars All of Plaintiff's Claims...................... 7

     B.     The Related Doctrine of *Res Judicata* Bars Plaintiff's Claims Based on URLs That Were the Subject of the State Court Order ........................................ 8

     C.     The CDA Bars Plaintiff's Reputation-Related Claims ........................................ 10

     D.     Plaintiff's Reputation-Related Claims Are Either Time-Barred or Premised Upon Content That Is Absolutely Privileged Under New York Law .......................................................... 11

     E.     Plaintiff Fails to Adequately Plead the Reputation-Related Claims.................... 13

     F.     Plaintiff Fails to Adequately Plead Trademark Infringement............................. 13

         1.     Plaintiff's Allegations of Trademark Infringement Related to Use of Marks in Non-Paid, Organic Search Results Fail to State a Claim................................................................ 14

         2.     Plaintiff's Allegations of Trademark Infringement Related to Use of Marks in Paid Advertising Fail to State a Claim ................................. 16

IV.   CONCLUSION.................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anonymous v. John Does 1-40,*
    Index No. 161158/2013 ................................................................................. 3-5, 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2010) ......................................................................................... 16

*Berlitz Schools of Languages of Am. v. Everest House,*
    619 F.2d 211 (2d Cir. 1980) ............................................................................ 7, 8

*Biro v. Conde Nast,*
    883 F. Supp. 2d 441 (S.D.N.Y. 2012) .......................................................... 12, 13

*Cintas Corp. v. Unite Here,*
    601 F. Supp. 2d 571 (S.D.N.Y. 2009) .............................................................. 15

*Desmond v. 20th Century Fox Record Corp.,*
    36 A.D.2d 925 (App. Div. 1st Dep't 1971) ...................................................... 11

*deVere Group GmbH v. Opinion Corp.,*
    877 F. Supp. 2d 67 (E.D.N.Y. 2012) .................................................... 14, 15, 17

*Feigen v. Advance Cap. Mgmt. Corp.,*
    146 A.D.2d 556 (App. Div. 1st Dep't 1989) ...................................................... 9

*Firth v. State,*
    98 N.Y.2d 365 (2002) ....................................................................................... 12

*Giannone v. York Tape & Label, Inc.,*
    548 F.3d 191 (2d Cir. 2008) ............................................................................ 7, 9

*Grogan v. Blooming Grove Volunteer Ambulance Corp.,*
    917 F. Supp. 2d 283 (S.D.N.Y. 2013) .............................................................. 11

*Grout Shield Distributors, LLC v. Elio E. Salvo, Inc.,*
    824 F. Supp. 2d 389 (E.D.N.Y. 2011) .............................................................. 14

*Haughton v. Burroughs,*
    No. 98 Civ. 3418(BSJ), 2004 WL 330242 (S.D.N.Y. Feb. 23, 2004) ......... 7, 8, 10

*Hengjun Chao v. Mount Sinai Hosp.,*
    476 Fed. Appx. 892 (2d Cir. 2012) ................................................................... 11

*Lacher v. Engel*,
33 A.D.3d 10 (App. Div. 1st Dep't 2006) ...........................................................13

*Mallgren v. Microsoft Corp.*,
975 F. Supp. 2d 451 (S.D.N.Y. 2013).................................................................17

*Murawski v. Pataki*,
514 F. Supp. 2d 577 (S.D.N.Y. 2007).................................................................10

*Riddell Sports Inc. v. Brooks*,
872 F. Supp. 73 (S.D.N.Y. 2005) .......................................................................11

*New Paltz Cent. School Dist. v. Reliance Ins. Co.*,
97 A.D.2d 566 (App. Div. 3rd Dep't 1989).........................................................9

*Rosen v. Hyundai Group (Korea)*,
829 F. Supp. 41 (E.D.N.Y. 1993) .......................................................................11

*Russian Am. Foundation, Inc. v. Daily News, L.P.*,
109 A.D.3d 410 (App. Div. 1st Dep't 2013) .......................................................13

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009)..................................................................................14

*Walker v. Schulti*,
717 F.3d 119 (2d Cir. 2013)................................................................................17

**Statutes**

15 U.S.C. § 1114(1)(a)...............................................................................................14

47 U.S.C. § 230(c) ...........................................................................................1, 4, 10

N.Y. Civil Rights Law § 74 .................................................................................12, 13

**Other Authorities**

CPLR 215(3) ...............................................................................................................11

Fed. R. Civ. P. 8...................................................................................................13, 16

*Organic Search,* Wikipedia available at
https://en.wikipedia.org/wiki/Organic_search ......................................................3

*PPC-pay per click*, Webopedia Online Tech Dictionary for IT Professionals
available at http://www.webopedia.com/TERM/P/PPC.html...................................16

*Search Engine*, Webopedia Online Tech Dictionary for IT Professionals available
at http://www.webopedia.com/TERM/S/search_engine.html ...................................3

*URL*, <u>Webopedia Online Tech Dictionary for IT Professionals</u> available at
    http://www.webopedia.com/TERM/U/URL.html .....................................................................2

# I.     __PRELIMINARY STATEMENT__

Almost three years ago, Plaintiff brought an action in New York State Supreme Court against "John Does 1-40," premised upon almost identical facts and seeking the same relief as in this action: removal of links to third-party Web sites that contain content about Plaintiff and his law firm that appear in search results on Microsoft's Bing™ search engine, and monetary damages. Although Plaintiff proceeded against the "John Does" *ex parte* and was able to obtain a temporary restraining order in the prior state court case, when he moved to enforce that order against Microsoft Corporation ("Microsoft"), the state court denied his motion and dismissed his complaint, effectively vacating the order. The state court's opinion, applying the Communications Decency Act ("CDA") and well-recognized principles of trademark law, precludes Plaintiff's attempt to re-litigate the same claims and issues against Microsoft here. As such, collateral estoppel and *res judicata* bar Plaintiff's claims.

If the Court decides to assess the merits of Plaintiff's complaint, it still should dismiss Plaintiff's claims. For the reasons articulated by the state court, the CDA bars all of Plaintiff's claims against Microsoft to the extent that such claims are predicated upon alleged defamatory content posted by third parties on Web sites such as RipoffReport.com. Microsoft, through its Bing search engine, merely provided links to this material in search results. As an interactive computer service provider, it is completely immune from claims that arise out of the publication of this material. *See* 47 U.S.C. § 230(c). CDA immunity extends to Plaintiff's claims for defamation, libel, slander, tortious interference with contract, breach of fiduciary duty, breach of the duty of loyalty, unfair trade practices, false advertising, unlawful trespass, civil RICO, unjust enrichment, intentional infliction of emotional distress, and negligent infliction of emotional distress (collectively, the "Reputation-Related Claims"). Plaintiff's trademark infringement

claims likewise fail because the Complaint is bereft of any allegations explaining how Microsoft uses Plaintiff's marks or how such use creates consumer confusion.

Further, in all instances except one, the third-party content linked to the URLs on which Plaintiff bases his Reputation-Related Claims was published over a year before Plaintiff commenced this action.[1] To the extent that Plaintiff's claims relate to this content, they are time-barred. The one URL that links to content that was published less than a year ago concerns a newspaper article about a criminal proceeding against Plaintiff. Claims based on that third-party content are barred by a statutory privilege immunizing reporting concerning judicial proceedings from defamation suits.

Finally, all of Plaintiff's claims should be dismissed because Plaintiff does not and cannot plead the requisite elements of any of them. Amendment of the complaint would be futile.

## II.   BACKGROUND

### A.   The Plaintiff

Plaintiff is a practicing attorney and a member of the New York State bar, who is proceeding *pro se*. *See* Compl. ¶ 1.[2] He also claims admission to practice before this Court, the United States District Courts for the Eastern and Northern Districts of New York, and several Courts of Appeals, including the United States Court of Appeals for the Second Circuit.[3]

### B.   Microsoft's Bing Search Engine

Microsoft's Bing is an Internet search engine that allows users to input keywords and search the World Wide Web for information. *See* Compl. ¶¶ 4, 6-7. In response to each query

---

[1]   A uniform resource locater (URL) is the global address of documents and other resources on the World Wide Web. Microsoft's Request for Judicial Notice, Ex. 1 [*URL*, Webopedia Online Tech Dictionary for IT Professionals available at http://www.webopedia.com/TERM/U/URL.html].

[2]   https://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5628536.

[3]   http://manchanda-law.com/attorney-profiles/

from a user, the search engine employs a proprietary algorithm to return an indexed set of results that are relevant to the query. *See id.*; Microsoft's Request for Judicial Notice, Ex. 2 [*Search Engine*, Webopedia Online Tech Dictionary for IT Professionals available at http://www.webopedia.com/TERM/S/search_engine.html]. These "organic" search results, which are listed on search engine results pages, appear because of their relevance to the search terms. *See* Compl. ¶¶ 4, 6-7; Microsoft's Request for Judicial Notice, Ex. 3 [*Organic Search*, Wikipedia available at https://en.wikipedia.org/wiki/Organic_search]. In contrast, "non-organic" results include "pay per click advertising"—ads that appear above or alongside organic search results. *Id.*

### C.    Plaintiff's Prior State Court Action

In August 2013, Plaintiff commenced an action in the Supreme Court of the State of New York, captioned *Anonymous v. John Does 1-40*, Index No. 161158/2013. In his complaint, Plaintiff claimed that "John Does 1-40 posted defamatory/libelous/slanderous and terroristic threats against him and his business on Ripoffreport.com… and infringed on his trademark[ed] … name and business name…" Dkt. No. 29-1, Ex. 1 [order dismissing complaint], at p. 1. The material at issue was "posted on Ripoff Report and the URL's appear when [Plaintiff's] name or business name are searched on the search engines of Google and Microsoft." *Id.* Plaintiff, proceeding *ex parte*, secured a temporary restraining order against the John Doe defendants. *See id.* He then sought to enforce the order against Microsoft and other non-parties, to "force Ripoff Report, Google and Microsoft to remove the information and the URL's from the[ir] Web sites."[4] *Id.* In addition, Plaintiff sought damages, asking for "$10,000 to be removed from the New York bank accounts of … Microsoft." *Id.*, at p. 2.

---

[4]    Plaintiff claims that the state court entered a "final permanent injunction" requiring, *inter alia*, that "Google and other search engines" delist Web site postings mentioning "Rahul

In a written order dated March 28, 2014, the Honorable Milton A. Tingling, Justice of the Supreme Court of the State of New York, rejected Plaintiff's attempt to enforce the August 26, 2013 order against Microsoft and the other non-parties, and dismissed Plaintiff's complaint in its entirety. *Id.*, at pp. 5-6. The state court recognized that, under Section 230 of the CDA, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" and that "no cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.*, at p. 2. In effect, the CDA provides immunity to interactive computer service providers that merely republish user-generated content. *Id.* Applying the CDA, Justice Tingling found that Microsoft was an "interactive [computer] service provider" within the meaning of the statute, that the allegedly defamatory material was not on Bing but "posted on a different Internet site," and that "Microsoft only provide[d] a search that when the plaintiffs [sic] name or business name is input, the information becomes accessible." *Id.*, at pp. 2-3. Justice Tingling concluded that, pursuant to the CDA, Microsoft was immune from Plaintiff's claims; further he dismissed Plaintiff's complaint in its entirety, stating that "there is no viable cause of action from which relief can be granted." *Id.*, at pp. 3, 4-5. In addition, the court found that

---

Manchanda" or "Manchanda Law Offices." Dkt. No. 26-3 [Order on Motion for Temporary Restraining Order and Preliminary Injunction]. However, the state court's order dismissing Plaintiff's complaint references only a *temporary* restraining order. It makes no mention of a permanent injunction. Because the record in *Anonymous v. John Does 1-40* has been sealed, absent an order unsealing the record, there is no way for Microsoft to verify from the state court's records that the court did, in fact, enter a permanent injunction. Further, even if there were such an injunction, it would not bind Microsoft. *Riverside Capital Advisors, Inc. v. First Secured Capital Corp.*, 28 A.D.3d 457, 460 (App. Div. 2nd Dep't 2006) ("A court has no power to grant relief against an entity not named as a party and not properly summoned before the court"); *Wasus v. Young Sun Oh*, 86 A.D.2d 753, 753 (App. Div. 4th Dep't 1982) (non-parties not bound by temporary restraining order in derogation of their rights).

Microsoft was "under no obligation to remove the [links to Ripoff Report] from [its] search results." *Id.*, at p. 3.

The state court also dismissed Plaintiff's claim for trademark infringement against Microsoft and the other non-parties. *Id.*, at p. 4. It recognized that "trademark infringement happens when you use a trademark owner's trademark in a way that is likely to confuse the public about the source or sponsor of your products or services." *Id.* And, that the "primary goal of trademark law is to protect consumers from [such] confusion[.]" *Id.* Accordingly, a claim for trademark infringement required a showing that the offending content "would have to have created confusion for consumers." *Id.*

Plaintiff did not allege, and the state court did not find, any possible consumer confusion. Instead, it concluded that, in Plaintiff's case, "consumers who were unsatisfied with the services plaintiff provided were addressing Plaintiff's name and business in criticisms" and that Microsoft and the other non-parties "were conduits for this criticism but were not making the postings themselves." *Id.* The state court found that trademarks did not protect Plaintiff from such criticism, and concluded that he had not stated a cause of action for trademark infringement. *Id.*

Plaintiff did not did not appeal the March 28, 2014 decision.

**D.    The Present Action**

On April 4, 2016, almost three years after the state court dismissed his complaint, Plaintiff filed the instant action in New York County Civil Court.[5] The factual allegations in Plaintiff's latest Complaint are nearly the same as those described in Justice Tingling's decision dismissing Plaintiff's prior action, and Plaintiff also seeks the same relief: damages and that Microsoft remove links to allegedly defamatory content from search results on Bing. Compl. ¶¶

---

[5]    On May 5, 2016, Defendant Yahoo, with the consent of the other defendants, timely removed Plaintiff's action to this Court. Dkt. No. 1.

7, 9.  As he did in the prior action, Plaintiff alleges that organic search results displaying his trademarked name and law firm name appear when a user searches for them using Bing, and that those results include links to third-party Web sites that contain supposedly defamatory content. *See* Compl. ¶¶ 4, 7, 9.  Plaintiff claims that Defendants, including Microsoft:

> … show case [sic] defamatory, slanderous, and libelous links which contained multiple instances of erroneous information, poorly performed research, non-corroborated statements, defamatory portrayals of Plaintiff, reckless disregard for the truth, negligent disregard for the truth, sensationalism aimed at capitalizing on Plaintiff's quasi-celebrity status to sell newspapers and attract people to their paid print and online advertisements, violations of his USPTO registered Trademarks… [sic] in order to divert search engine revenue derived from Plaintiff's Trademark to their website in order for people to view and buy their advertised products, confusing Plaintiff's customers when typing in his name on the search engines in order to be diverted to their websites where they view and purchase their own paid advertising clients information, and other torts.  *Id.*

Plaintiff does not allege that Microsoft created any of the allegedly offending content, which consists of consumer complaints about Plaintiff and his business, and a *New York Post* article about a pending legal proceeding involving Plaintiff that quotes court filings and Plaintiff's own attorney.  Compl. ¶ 7; Dkt. Nos. 29-1, Exs. 2, 3, 4, and 5; Goldstein Decl. Exs. 1, 2.

Plaintiff also alleges, vaguely, that Microsoft derives advertising revenue from the use of Plaintiff's trademarks.  *Id.* at ¶¶ 2-4, 7, 9.  But, Plaintiff does not and cannot identify the source of this alleged revenue or explain how Microsoft derives it, either through organic searches or pay-per-click advertising.

Based on these allegations, Plaintiff alleges 14 claims against Microsoft:  (1) defamation; (2) libel; (3) slander; (4) tortious interference with contract; (5) breach of fiduciary duty, (6) breach of the duty of loyalty; (7) unfair trade practices; (8) false advertising; (9) unlawful

trespass; (10) civil RICO; (11) unjust enrichment; (12) intentional infliction of emotional distress; (13) negligent infliction of emotional distress; and (14) trademark infringement.

## III.   ARGUMENT

### A.   Collateral Estoppel Bars All of Plaintiff's Claims.

Collateral estoppel precludes a party from re-litigating factual or legal issues previously resolved against it where the issue in the prior action is identical and where the party against whom the estoppel is sought has been afforded a full and fair opportunity to contest the decision. *See, e.g., Berlitz Schools of Languages of Am. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980); *Haughton v. Burroughs*, No. 98 Civ. 3418(BSJ), 2004 WL 330242, at *7 (S.D.N.Y. Feb. 23, 2004) ("Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action") (internal quotations omitted).[6]

Here, collateral estoppel mandates dismissal of Plaintiff's claims—even those that are premised upon third-party content not expressly addressed by Justice Tingling's dismissal order. The factual and legal issues Justice Tingling decided against Plaintiff and in favor of Microsoft are identical to those underlying his claims in this action, and there is no question that Plaintiff had a full and fair opportunity to litigate those issues in state court.  In this case, as in the state court action, Plaintiff seeks to hold Microsoft responsible for organic search results on Bing that contain links to third-party content on third-party Web sites.  Also as in the state court action, Plaintiff does not and cannot allege that Microsoft created any of the offending content. Accordingly, Justice Tingling's decision, premised upon holdings that Microsoft was an

---

[6]   To determine the preclusive effect of the state court's judgment, this Court must look to New York law.  *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 192-93 (2d Cir. 2008) (When "determining the effect of a state court judgment, federal courts … are required to apply the preclusion law of the rendering state.").

interactive computer service provider and, as such, was immune from liability to Plaintiff under the CDA for third-party content, and that Microsoft was "under no obligation to remove the [links] from [its] search results," precludes Plaintiff's Reputation-Related Claims in the instant action. Plaintiff may not impose such liability on Microsoft or require Microsoft to remove links to third-party content in organic search results on Bing.

Justice Tingling also disposed of Plaintiff's trademark infringement claim, finding, as a matter of law, that such claim specifically required allegations of consumer confusion and could not be predicated upon third-party content that was merely critical of Plaintiff and his law firm. The state court held that such content could not create consumer confusion about the source or sponsorship of goods or services—an essential element of trademark infringement.[7]

Because the above issues were decided against Plaintiff, collateral estoppel bars all of Plaintiff's Reputation-Related Claims, as well as his trademark claims. *See, e.g., Berlitz Schools*, 619 F.2d at 215-16 (Lanham Act claim barred by estoppel where prior proceeding determined that allegedly infringing content did not create consumer confusion); *Haughton*, 2004 WL 330242, at *7 (defendant's immunity from suit, determined by state court in dismissal of prior complaint, barred plaintiff from pursuing new claims in federal court).

**B.**     **The Related Doctrine of *Res Judicata* Bars Plaintiff's Claims Based on URLs That Were the Subject of the State Court Order.**

To the extent that Plaintiff's claims arise from allegedly defamatory third-party content on ripoffreport.com, they also are barred by *res judicata*. A New York state court already denied

---

[7] It is difficult to tell from the state court's March 28, 2014, order whether Plaintiff alleged in that case that Microsoft somehow derives advertising revenue from the use of his marks. To the extent he did, then Plaintiff's claims in the instant action that are premised upon such allegations also are barred by collateral estoppel. To the extent he did not, as discussed below, Plaintiff cannot even meet the Rule 8 pleading standard with respect to any aspect of his trademark infringement claim in this case.

the relief Plaintiff seeks against Microsoft in a prior action concerning that content,[8] and

Plaintiff's claims are barred by the state court's order. New York law is that a "final judgment

on the merits of an action precludes the parties or their privies from relitigating issues that were

or could have been raised in that action." [9] *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191,

193 (2d Cir. 2008). Under New York's transactional approach to *res judicata*, "once a claim is

brought to a final conclusion, all other claims arising out of the same transaction or series of

transactions are barred, even if based upon different theory…" *Id.* at 194. The dismissal of a

prior complaint is treated as a judgment on the merits for preclusion purposes. *See, e.g., Feigen

v. Advance Cap. Mgmt. Corp.*, 146 A.D.2d 556, 558 (App. Div. 1st Dep't 1989) (dismissal not

for "technical pleading defects" was "on the merits for res judicata purposes").

In his March 28, 2014, order in *Anonymous v. John Does 1-40*, Justice Tingling rejected

Plaintiff's attempt to hold Microsoft liable for the content of search results on Bing, whether on a

defamation theory or based on alleged trademark infringement, expressly held that Microsoft

was not required to remove any links to third-party content on www.ripoffreport.com from such

search results, and dismissed Plaintiff's complaint. Plaintiff did not appeal that decision, which

is *res judicata* as to claims against Microsoft in this action that are premised upon third-party

---

[8]    The unsigned document that Plaintiff has represented to be the complaint in Plaintiff's initial state court action contains a list of URLs, including two of the same ripoffreport.com URLs referenced in paragraph 7 of the Complaint in this case. Dkt. No. 41-1, at pp. 6, 7. In that paragraph, Plaintiff also references a URL for a directory of links to most of the other ripoffreport.com Web pages that were the subject of his prior state court action. Goldstein Decl. Ex. 1.

[9]    Although Microsoft was not a party to Plaintiff's prior state court action, because the state court's dismissal of Plaintiff's complaint against John Does 1-40 in that action foreclosed any possible liability on the part of Microsoft for the alleged conduct of these third parties, Microsoft may invoke *res judicata* to bar Plaintiff's claims in this case. *See, e.g., New Paltz Cent. School Dist. v. Reliance Ins. Co.*, 97 A.D.2d 566, 567 (App. Div. 3rd Dep't 1989) (non-parties to a prior action may invoke *res judicata* to preclude subsequent suit where plaintiff alleges that non-parties are derivatively liable for conduct alleged in prior action).

content posted on the ripoffreport.com URLs in Plaintiff's pending Complaint—regardless of Plaintiff's legal theory. *Haughton v. Burroughs*, 2004 WL 330242, at \*6-\*7 (dismissal of state court complaints barred federal action, asserting new legal theories but arising from the same set of transactions).

### C.    The CDA Bars Plaintiff's Reputation-Related Claims.

Leaving aside the preclusive effect of collateral estoppel and *res judicata* on Plaintiff's claims and looking at the substance of the Complaint, Section 230 of the CDA mandates dismissal of Plaintiff's Reputation-Related Claims. Section 230 provides, *inter alia*, that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" and that "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(c)(1), (e)(3).

Like Yahoo and other providers of search engine services, Microsoft is an "interactive computer service provider" under the CDA. *See, e.g., Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007). As such, Microsoft is immune from liability for Plaintiff's Reputation-Related claims because they are based upon third-party content, including those claims based on Microsoft's refusal to allow, edit, or remove such content. *Id.* Thus, for the reasons stated in Section IV.A of defendant Yahoo's Memorandum of Law in Support of Motion to Dismiss ("Yahoo's Memo"), which Microsoft incorporates by reference, Plaintiff's Reputation-Related Claims against Microsoft are barred by the CDA and should be dismissed. Dkt. No. 29-1, at pp. 4-7.[10]

---

[10]    Section 230(e) of the CDA carves out intellectual property claims from the general grant of immunity to interactive computer service providers. *See* 28 U.S.C. § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."). Although not subject to the CDA, Plaintiff's trademark claims are still barred

**D.** **Plaintiff's Reputation-Related Claims Are Either Time-Barred or Premised Upon Content That Is Absolutely Privileged Under New York Law.**

New York has a one-year statute of limitations for defamation claims.  CPLR 215(3) (imposing one-year limitations period for, *inter alia*, "libel, slander, false words causing special damages").  This limitations period is applicable to any claim that seeks recovery for alleged injury to reputation.[11]  Here, Plaintiff alleges reputational injury flowing from defamatory third-party content on Web sites, the links to which appeared in Bing search results.  *See, e.g.,* Compl. ¶¶ 7, 9, *see also id.* at ¶ 12 (claiming, *inter alia*, that Microsoft's failure to remove the links from search results made Plaintiff "into an online pariah").  Thus, the one-year limitations period applies to Plaintiff's Reputation-Related Claims.

Under New York's single publication rule, Plaintiff's claims accrued and the one-year statute of limitations began to run when the allegedly defamatory content was first posted on the Internet.  *Grogan v. Blooming Grove Volunteer Ambulance Corp.*, 917 F. Supp. 2d 283, 290 (S.D.N.Y. 2013) ("a reading of libelous material by additional individuals after the original publication date does not change the accrual date for a defamation cause of action but, rather, the

---

by collateral estoppel and should also be dismissed for failure to state a claim.  *See* Sections III.A, *supra*, and III.F, *infra*.

[11]  *See Riddell Sports Inc. v. Brooks,* 872 F. Supp. 73, 75-76 (S.D.N.Y. 2005) (applying one-year limitations period to dismiss tortious interference and other claims where party alleged that "due to disparaging statements, general business opportunities and potential income were lost" and injury complained of "flows from the professed effect [of defendants'] actions had on [plaintiffs'] reputation"); *Rosen v. Hyundai Group (Korea)*, 829 F. Supp. 41, 49 (E.D.N.Y. 1993) (applying one-year limitations period to all claims premised upon alleged disparaging remarks); *Desmond v. 20th Century Fox Record Corp.*, 36 A.D.2d 925, 926 (App. Div. 1st Dep't 1971) (unfair competition and other claims were "framed solely for the purpose of recovery of damages for alleged injury to his professional reputation and, consequently, the one year statute of limitations" applies); *see generally Hengjun Chao v. Mount Sinai Hosp.*, 476 Fed. Appx. 892, 895 (2d Cir. 2012) ("New York law considers claims sounding in tort to be defamation claims ... where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation").

accrual date remains the time of the original publication"); *see also Firth v. State*, 98 N.Y.2d 365, 370 (2002) (single publication rule applies to content posted on the Internet). Except for the *New York Post* article, all of the third-party content upon which Plaintiff's claims are based, including complaints about Plaintiff on ripoffreport.com, complaintsboard.com, and scamorg.com, was posted before April 4, 2015, one year before Plaintiff commenced this action. *See* Compl. ¶ 7; Dkt. Nos. 29-1, Ex. 3 (ripoffreport.com, posted June 06, 2008), Ex. 4 (ripoffreport.com, posted July 10, 2013), Ex. 5 (complaintsboard.com, posted February 8, 2015, and prior); Goldstein Decl. Ex. 1 (ripoffreport.com, index of posts, updated October 29, 2014); *Id*. Ex. 2 (scamorg.com, created October 15-18, 2014).[12] Accordingly, all of Plaintiff's Reputation-Related Claims that are predicated upon this allegedly defamatory content are time-barred.

Aside from the stale consumer complaints, Plaintiff also bases his claims on a more recent *New York Post* article concerning a criminal proceeding against Plaintiff. Dkt. No. 29-1, Ex. 2. However, any "publisher" of that article, which relies upon and quotes extensively from court papers filed in that proceeding, is absolutely immune from defamation claims under Section 74 of New York's Civil Rights Law. That statute provides, in relevant part, that "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding… or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published."

---

[12]    The Court may consider copies of the Web pages Plaintiff lists in paragraph 7 of the Complaint because Plaintiff incorporates them by reference, and because Plaintiff's Reputation-Related Claims against Microsoft are based on the contents of those Web pages, which are "integral to Plaintiff's allegations." *See, e.g., Biro v. Conde Nast*, 963 F. Supp. 2d 255, 264 (S.D.N.Y. 2013).

Thus, even if Microsoft could be deemed a "publisher" of the article, which it cannot, the statute would bar any defamation-based claim against Microsoft.  *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 478 (S.D.N.Y. 2012) ("Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within § 74's privilege")) quoting *Lacher v. Engel*, 33 A.D.3d 10, 17 (App. Div. 1st Dep't 2006); *Russian Am. Foundation, Inc. v. Daily News, L.P.*, 109 A.D.3d 410, 412-13 (App. Div. 1st Dep't 2013) (dismissing defamation claim based upon newspaper article reporting on court papers filed in criminal proceeding).

E.    **Plaintiff Fails to Adequately Plead the Reputation-Related Claims.**

Plaintiff's complaint, at the end of the day, simply fails to state any plausible claims demonstrating an entitlement to relief.  *See* Fed. R. Civ. P. 8(a)(2).  As discussed at length in Yahoo's Memo, pp. 11-19, Plaintiff has not and cannot allege the requisite elements to plead any of his Reputation-Related Claims.  Rather than repeating the arguments set forth in Yahoo's Memo, Microsoft incorporates and adopts them, as they apply with equal force to Plaintiff's claims against Microsoft.

F.    **Plaintiff Fails to Adequately Plead Trademark Infringement.**

Likewise, Plaintiff has not and cannot adequately plead a claim for trademark infringement against Microsoft.  Although Plaintiff's allegations are far from clear, his trademark infringement claims against Microsoft appear to be premised upon two theories.  First, Plaintiff asserts that the appearance of his marks in organic search results on Bing constitutes trademark infringement because, when one inputs Plaintiff's trademarks into Bing, the results include links directing consumers to third-party Web sites containing material critical of Plaintiff and his law firm.  *See* Compl. ¶ 7, 9.  Second, Plaintiff asserts that Microsoft somehow derives revenue from

the use of Plaintiff's marks in pay-per-click advertising, and that this is a "prima facie violation" of his protected marks.  *See* Compl. ¶¶ 2-3, 7.  Neither theory states a plausible claim for relief.

1.  **Plaintiff's Allegations of Trademark Infringement Related to Use of Marks in Non-Paid, Organic Search Results Fail to State a Claim.**

To state a claim for trademark infringement against Microsoft, Plaintiff must allege, *inter alia*, that Microsoft used plaintiff's marks in connection with the sale or advertising of goods or services, and such use is likely to cause confusion or to deceive consumers.  *See* 15 U.S. Code § 1114(1)(a); *deVere Group GmbH v. Opinion Corp.*, 877 F. Supp. 2d 67, 70-71 (E.D.N.Y. 2012) ("The crucial issue in an action for trademark infringement ... is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question") quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009).  Plaintiff has not and cannot plausibly allege either that Microsoft uses his marks or that such use is likely to confuse consumers.

There is no question that the mere appearance of Plaintiff's trademarks in organic search results on Bing, prompted by Bing users inputting Plaintiff's marks into the search bar, does not constitute Microsoft's "use" of Plaintiff's trademarks to sell or advertise goods and services.  These organic search results contain links to third-party Web sites and appear because of their relevance to the search query.  By definition, they are ***not*** advertisements.  *See Grout Shield Distributors, LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 397-98 (E.D.N.Y. 2011) (distinguishing between organic search which "will rank results based how many Web sites reference the search terms" and pay-per-click ads on Google and Bing).

Further, Plaintiff does not and cannot allege that Microsoft operates any of the third-party Web sites that he identifies in the Complaint as displaying his marks, which include Internet

forums for consumer complaints and a newspaper's Web site.  Thus, Microsoft cannot be deemed to be using Plaintiff's marks on these third-party Web sites, either.

Even if Microsoft did own these third-party Web sites and used Plaintiff's marks on the sites, such use cannot create confusion because it accurately identifies Plaintiff or his law firm as the target of complaints or, in the case of the *New York Post*, the subject of a criminal proceeding.  *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y. 2009) (There "is no justification for relief" when the defendants "us[e] plaintiff's mark not in a manner that would create confusion as to the source, but rather as part of a message whose meaning depend[s] on reference to plaintiff's product'") quoting *United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 92-93 (2d Cir. 1997).  In *Cintas*, the court held that "while the materials available on Defendants' Web sites may disparage [plaintiff], the likelihood that [plaintiff's] actual or potential customers will be confused about who provides [plaintiff's] goods and services is remote."  601 F. Supp. 2d at 579.  Such is the case here as well.

Indeed, "Courts have consistently held that so-called "gripe sites" incorporating derogatory or critical terms alongside a company's trade name, in both the domain name and the Web site contents, do not present a likelihood of confusion" needed to establish trademark infringement.  *See, e.g., deVere Group*, 877 F. Supp. 2d at 71.  For these reasons, also explained on pages 7–11 of Yahoo's Memo, which Microsoft adopts and incorporates, Plaintiff has not and cannot state a claim for trademark infringement related to marks that appear in organic search results on Bing.

## 2. Plaintiff's Allegations of Trademark Infringement Related to Use of Marks in Paid Advertising Fail to State a Claim.

Plaintiff asserts, in conclusory fashion, that Microsoft is "making money off of" and "benefitting" from the use of his marks in its pay-per-click advertising business.[13]  But, he offers no allegation or explanation of how Microsoft supposedly does this.  Indeed, Plaintiff's complaint is completely devoid of basic allegations concerning the use of his marks by Microsoft in paid advertising.  Plaintiff does not identify to whom Microsoft supposedly sold pay-per-click ads using Plaintiff's trademarks or what those ads contained.  Plaintiff does not even allege that inputting Plaintiff's trademarks as keywords into Bing returns ***any*** pay-per-click ads or that the advertisers pay Microsoft when users click on those ads.

The absence of any substantive allegations violates the basic pleading requirements in the Federal Rules and dooms Plaintiff's trademark infringement claim.  *See, e.g.,* Fed. R. Civ. P. 8 ("a pleading that states a claim for relief must contain: … a short and plain statement of the claim showing that the pleader is entitled to relief…"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2010) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Nothing in Plaintiff's Complaint even suggests a facially plausible claim for relief

---

[13]  In pay-per-click advertising, advertisements appear when Bing users search for keywords or phrases selected by advertisers, and advertisers pay Microsoft each time a potential customer clicks on that advertiser's ads.  Microsoft's Request for Judicial Notice, Ex. 4 [*PPC-pay per click*, <u>Webopedia Online Tech Dictionary for IT Professionals</u> available at http://www.webopedia.com/TERM/P/PPC.html].

against Microsoft, much less one premised upon Microsoft's use of Plaintiff's marks in paid advertisements.[14]

Even if Plaintiff's Complaint could somehow be construed to allege that Microsoft derived pay-per-click advertising revenue from the sale of Plaintiff's marks as keywords to ripoffreport.com or other Web sites mentioned in the Complaint, this would not constitute trademark infringement absent substantive factual allegations of consumer confusion as to these Web sites' affiliation, connection, or identification with Plaintiff. Plaintiff's Complaint, however, contains no allegations concerning how consumers were confused, who or what confused them, what they were confused about, or any other assertions supporting a plausible claim of trademark infringement. Indeed, the complaint contains only incoherent and conclusory assertions that Plaintiff's customers were "diverted" to unidentified Web sites where such consumers "view and purchase" unidentified products. Compl. ¶ 9. Plaintiff has failed to allege even that these unidentified Web site operators competed with Plaintiff in the market for legal services. In the absence of such allegations supporting a plausible theory of consumer confusion, Plaintiff's trademark infringement claims fail as a matter of law. *See, e.g., deVere Group*, 877 F. Supp. 2d at 71 (dismissing infringement claims absent allegations supporting confusion).

---

[14] Although Plaintiff proceeds *pro se*, he is a member of the New York bar, claims admission to practice before this Court, and his complaint should be held to the standard applicable to pleadings prepared by attorneys. But, even if the Court applies the less stringent standard applicable to *pro se* litigants, Plaintiff's claim must fail. *See Mallgren v. Microsoft Corp.*, 975 F. Supp. 2d 451, 455 (S.D.N.Y. 2013) (recognizing that while a court must "liberally construe" *pro se* complaints to "raise the strongest arguments they suggest," even a *pro se* complaint, like any other, "must state a plausible claim for relief") quoting *Walker v. Schulti*, 717 F.3d 119, 124 (2d Cir. 2013).

## IV.     <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Microsoft respectfully requests that the Court

dismiss Plaintiff's complaint against Microsoft in its entirety, with prejudice and without leave to

amend.

DATED:  New York, New York
            June 13, 2016

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: <u>/s/ *Richard S. Goldstein*</u>
Richard S. Goldstein
51 West 52nd Street
New York, NY 10019
Tel:  (212) 506-5000
Fax:  (212) 506-5151
Email:  rgoldstein@orrick.com

*Attorneys for Microsoft Corporation*