UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAHUL MANCHANDA,

                        Plaintiff,

          v.

GOOGLE, YAHOO, and MICROSOFT BING,

                        Defendants.

16-CV-3350 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff Rahul Manchanda initially filed this action in Civil Court of the City of New York, County of New York, and it was removed to this Court by Defendant Yahoo! Inc. ("Yahoo") on May 5, 2016. (Dkt. No. 1.) Pending before the Court are three motions to dismiss filed by Defendants Yahoo (Dkt. No. 28), Microsoft Corporation ("Microsoft") (Dkt. No. 44), and Google Inc. ("Google") (Dkt. No. 50); and a motion for sanctions filed by Manchanda (Dkt. No. 26). For the reasons that follow, Defendants' motions to dismiss are granted and Manchanda's motion for sanctions is denied.

## I. Background

    Manchanda is an attorney appearing *pro se*.[1] (Dkt. No. 1 at 7.) He alleges that Defendants, who operate internet search engines, have harmed his reputation by indexing websites that describe him in negative terms, and that Defendants have profited therefrom. (*Id.*)

    Manchanda raises thirteen claims against Defendants, sounding primarily in tort and trademark: (1) Defamation, (2) Libel, (3) Slander, (4) Tortious Interference with Contract, (5)

---

[1]     Though courts are obliged to construe *pro se* pleadings liberally, this presumption does not apply to attorneys representing themselves. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

Breach of Fiduciary Duty, (6) Breach of the Duty of Loyalty, (7) Unfair Trade Practices, (8) False Advertising, (9) Unlawful Trespass, (10) Civil RICO, (11) Unjust Enrichment, (12) Intentional Infliction of Emotional Distress, (13) Negligent Infliction of Emotional Distress, and (14) Trademark Infringement. (*Id.* at 13-16.) Manchanda seeks injunctive relief against Defendants, requiring them to de-index or remove the offending websites from their search engines, as well as compensatory and punitive damages. (*Id.*)

Manchanda also filed a motion for sanctions against Defendants in the amount of one hundred million dollars. (Dkt. No. 26.) Manchanda alleges that Defendants are refusing to comply with an order issued by a New York State court, and claims that their actions are racially motivated. (*Id.* at 1-2.) (The New York State proceeding to which Manchanda refers is addressed in greater detail below.) Manchanda has further buttressed his allegations by filing multiple letters with the Court, attaching numerous articles about Defendants' businesses and actions. (*See, e.g.*, Dkt. No. 43; Dkt. No. 61; Dkt. No. 65.)

## II. Discussion

Before the Court are three motions to dismiss and a motion for sanctions. The Court first addresses the motions to dismiss together, as they raise substantially the same issues, and then the motion for sanctions.

### A. Motions to Dismiss

Defendants Yahoo, Microsoft, and Google each move to dismiss Manchanda's claims under Rule 12(b)(6). (Dkt. No. 29 at 4; Dkt. No. 45 at 16; Dkt. No. 51 at 6.) Defendants argue that Manchanda's defamation and related claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230. Regarding his remaining causes of action, Defendants argue that Manchanda fails to plead facts sufficient to state a claim for which relief

can be granted.  Defendants Microsoft and Google also argue that Manchanda's claims are precluded by an earlier state-court decision.  These three arguments are addressed in turn.

        1.        **The Communications Decency Act**

A majority of Manchanda's claims fail as a result of the protection afforded to Defendants under Section 230 the Communications Decency Act ("CDA").  Specifically, all of Manchanda's claims except those for trademark infringement, unfair trade practices, and false advertising are preempted by the CDA, which immunizes search engines from civil liability for reputational damage resulting from third-party content that they aggregate and republish.

Section 230 of the CDA provides broad immunity to internet service providers from liability for content authored by third parties.  47 U.S.C. § 230.  It provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," *id.* § 230(c)(1), and immunizes such services from "cause[s] of action" and "liability . . . imposed under any State or local law that is inconsistent" with the CDA, *id.* § 230(e)(3).

Defendants' search engines are "interactive computer service[s]" eligible for protection under the CDA.  The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." *Id.* § 230(f)(2).  "This wording has been construed broadly to effectuate the statute's speech-protective purpose. . . ." *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015).  Defendants' actions here were taken in their capacity as search engines (services that enable users to search the internet for specified terms, returning websites generated by third parties that match those terms).  As aggregators of third-party content, search engines fit into the definition of "interactive computer service" under the CDA. *See Fed. Trade Comm'n v. LeadClick Media, LLC*, No. 15-1009-CV, 2016 WL 5338081, at *12 (2d Cir. Sept. 23, 2016)

("Courts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within this definition."). Multiple courts have found some of the Defendants' search engines here to be "interactive computer services" for the purpose of CDA immunity. *See, e.g.*, *Getachew v. Google, Inc.*, 491 F. App'x 923, 925-26 (10th Cir. 2012) (Google); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) (Yahoo).

Courts have interpreted the CDA to give search engines broad immunity from defamation and other related causes of action resulting from their aggregation and republication of third-party content. "At its core, § 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'" *LeadClick Media*, 2016 WL 5338081, at *13 (quoting *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014)). This immunity attaches regardless of the specific claim asserted against the search engine, so long as the claim arises from the publication or distribution of content produced by a third party and the alleged injury involves damage to a plaintiff's reputation based on that content. *See Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 725 (S.D.N.Y. 2014) ("New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." (alterations in original) (quoting *Chao v. Mount Sinai Hosp.*, 476 Fed App'x 892, 895 (2d Cir. 2012))).

Here, many of Manchanda's clams arise from Defendants' publication of third-party content, with alleged damages flowing from reputational harms caused by that content (namely, Manchanda's claims for defamation, libel, slander, tortious interference with contract, breach of fiduciary duty, breach of the duty of loyalty, unlawful trespass, civil RICO, unjust enrichment,

intentional infliction of emotional distress, and negligent infliction of emotional distress).  The specific websites with allegedly defamatory content that Manchanda cites are all third-party websites; he does not allege that Defendants created the content.  (*See* Dkt. No. 1 at 8-11 (listing links).)  Moreover, his complaint seeks (in addition to damages) the removal or de-indexing of the offending links, confirming that Manchanda's grievance is with Defendants' actions as search engines and aggregators.  (*Id.* at 13.)

Because Defendants were acting only as publishers of sites whose content caused Manchanda's alleged injury, the CDA immunizes Defendants from liability.  *See LeadClick Media*, 2016 WL 5338081, at *13.  And the CDA's broad protection for internet publishers also protects Defendants from any obligation to remove or de-index any links.  *See Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Deciding whether or not to remove content or deciding when to remove content falls squarely within [a search engine's] exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity.").

The Court is sensitive to the deep personal harms that can result from hurtful information posted on the internet.[2]  But the CDA prevents individuals from "su[ing] the messenger." *Ricci*, 781 F.3d at 28 (quoting *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008)).  As such, Manchanda's defamation and related claims must be dismissed.

---

[2]   Indeed, concern for personal privacy has motivated legal systems other than our own to recognize a so-called "right to be forgotten," allowing individuals greater power to define what information about them is available on the internet.  *See* Case C-131/12, Google Spain SL v. Agencia Espanola de Proteccion de Datos, ECLI:EU:C:2014:317, http://curia.europa.eu/juris/liste.jsf?language=en&jur=C,T,F&num=C-131/12&td=ALL.

### 2. Failure to State a Claim

Manchanda's remaining claims—along with some of those precluded by the Communications Decency Act—fail to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, courts must accept as true all "factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572, and must draw "all inferences in the light most favorable to the non-moving party," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).

Each of Manchanda's remaining claims, along with several claims discussed above, will be addressed in turn below.[3]

### a. Trademark Infringement

Manchanda also asserts a claim for trademark infringement.[4] He alleges that Defendants used his registered trademarks—"Rahul Manchanda," USPTO Reg. No. 4,485,094, and "Manchanda Law Offices," U.S.P.T.O. Reg. No. 4,504,612 (Dkt. No. 1 at 24-25)—to "divert search engine revenue . . . to them and to manipulate the search engine value of [these] trademarks on the internet, in order for people to buy their advertised products" (*id.* at 16).

---

[3] The Court addresses all of the claims individually challenged by Defendant Yahoo. (Dkt. No. 29 at 7-19.) Defendants Microsoft and Google challenge some of Manchanda's claims individually, and adopt Yahoo's arguments as to the claims they do not address. (Dkt. No. 45 at 13; Dkt. No. 51 at 19.)

[4] Manchanda's trademark claim is not foreclosed by the CDA, which expressly excludes intellectual property claims from its broad grant of immunity. 47 U.S.C. § 230(e)(2).

Manchanda challenges both the appearance of his marks in Defendants' organic search results and Defendants' alleged use of his marks in connection with paid advertising. (*Id.* at 7-11.)

To state a claim for infringement of a registered trademark, a plaintiff must show that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' (5), without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (alteration in original) (quoting 15 U.S.C. § 1114(1)(a)). "In addition, the plaintiff must show that defendant's use of that mark 'is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'" *Id.* (alterations in original) (quoting 15 U.S.C. § 1125(a)(1)(A)).

Manchanda's trademark claim fails because he has not shown that Defendants' use[5] of his marks is likely to cause confusion. *See Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978)) (describing likelihood of confusion as the "crucial issue" in a trademark infringement action). None of the allegedly infringing websites is competing or affiliated with Manchanda (a lawyer) or his law firm.[6] It is highly unlikely that any customer—much less "an appreciable number of

---

[5] It is unnecessary to decide whether Defendants' use of Manchanda's trademarks amounts to use in commerce under the Lanham Act. *See* 15 U.S.C. § 1114(1)(a). However, the Court notes that Manchanda has not pleaded that Defendants actually own any of the offending websites and has not identified any advertisements using his marks from which Defendants received monetary benefit. While Manchanda provides a price quote from Google showing what it would cost to purchase his marks as keywords for online advertising, he has not alleged that anyone has, in fact, purchased them. (Dkt. No. 1 at 26-31.)

[6] In his complaint, Manchanda provides links to the websites that allegedly infringe his trademark. They include posts on the consumer complaint forums "Ripoff Report," "Complaints Board," "USACOMPLAINTS.COM," and "ScamOrg," along with an article from the New York Post. (Dkt. No. 1 at 8-11.)

ordinarily prudent purchasers"—would visit these websites and be confused as to their nature and origin. *Id.* (quoting *Mushroom Makers, Inc.*, 580 F.2d at 47). Moreover, courts have consistently held that a plaintiff cannot make out a claim for infringement where, as here, the use of a mark is for the purpose of identifying the markholder. *See, e.g.*, *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y. 2009), *aff'd*, 355 Fed. App'x 508 (2d Cir. 2009). Because Manchanda has failed to allege the use of his marks in commerce in a manner likely to cause confusion, his trademark claim must be dismissed.

### b. Unfair Trade Practices and False Advertising

Section 349 of the New York General Business Laws prohibits "'[d]eceptive acts or practices in the conduct of any business.'" *City of New York v. Smokes–Spirits.com, Inc.*, 911 N.E.2d 834, 837 (N.Y. 2009) (alteration in original) (quoting N.Y. Gen. Bus. Law § 349(a)). "To show a violation of that section, a plaintiff must prove that 'a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, No. 13-CV-150, 2015 WL 5730022, at *6 (S.D.N.Y. Sept. 30, 2015) (quoting *Smokes–Spirits.com, Inc.*, 911 N.E.2d at 838). The standard for false advertising under Section 350 of the New York General Business Laws, "while specific to false advertising, is otherwise identical to section 349." *Id.* (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002)).

Manchanda has failed to plead that Defendant's conduct is materially misleading so as to support a claim for unfair trade practices or false advertising. As discussed above in the context of Manchanda's trademark claims, neither Defendants' search engines nor the underlying websites are competing with Manchanda or using his or his business's name in commerce.

Moreover, Defendants' use is unlikely to confuse, since the very purpose is to refer to Manchanda himself and to his business.

Manchanda's allegations provide no basis on which to plausibly infer that Defendants' conduct is likely to mislead a reasonable consumer. *In re Avon*, 2015 WL 5730022, at *6 ("Whether consumer-oriented conduct was materially misleading is an objective question, requiring courts to consider whether the conduct is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995))). As such, his claims for unfair trade practices and false advertising must be dismissed.

### c. Tortious Interference with Contract

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (internal quotation marks omitted)). Nowhere in his complaint does Manchanda allege that any contract existed or that Defendants procured the breach of a contract between Manchanda and a third party. Manchanda has not adequately stated a claim for tortious interference with contract.

### d. Breach of Fiduciary Duty and Breach of the Duty of Loyalty

In order to state a claim for breach of fiduciary duty or breach of the duty of loyalty, a plaintiff must allege the existence of a fiduciary relationship. *See CMG Holdings Grp. v. Wagner*, No. 15-CV-5814, 2016 WL 4688865, at *10 (S.D.N.Y. Sept. 7, 2016) ("Under New York law, '[t]he elements of a claim for breach of a fiduciary obligation are: (i) the existence of a

9

fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" (alterations in original) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011))). "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861, 2016 WL 6092705, at *24 (S.D.N.Y. Oct. 18, 2016) (quoting *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19 (N.Y. 2005)).

Here, Manchanda has failed to allege the existence of any such fiduciary relationship with any of the Defendants. Defendants are search engines that aggregated websites mentioning Manchanda and his business; there is no claim that Defendants were under any duty to act for or give advice to Manchanda. As such, Manchanda's claims for breach of fiduciary duty and breach of the duty of loyalty must be dismissed.

### e. Unlawful Trespass

Manchanda also seeks recovery under a theory of unlawful trespass. Courts applying New York law generally treat claims of trespass to intangible property as claims for trespass to chattels. *See, e.g.*, *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005). Under New York law, "trespass to a chattel may be committed by intentionally . . . using or intermeddling with a chattel in the possession of another, where the chattel is impaired as to its condition, quality, or value." *Register.com v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (alterations in original) (citations omitted); *see also* Restatement (Second) of Torts § 217 (1965).

Manchanda has not provided the Court with a clear theory under which trespass to chattels could have occurred. He has not alleged that Defendants had possession of any of his personal property or that any such property was impaired. Absent any such allegations, he fails to state a claim for unlawful trespass.

### f. Civil RICO

In order to adequately plead a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), a plaintiff must plead, inter alia, at least two predicate acts of racketeering activity. *See* 18 U.S.C. § 1962(c); *id.* § 1961(5); *see also id.* § 1961(1) (listing RICO predicate acts). Manchanda makes no allegations of conduct by Defendants that rise to the level of RICO predicate offenses and so fails to state a RICO claim. To the extent that Manchanda's complaint and multiple letters filed with the Court can be interpreted to suggest that Defendants engaged in wire fraud (which is a RICO predicate under 18 U.S.C. § 1343), he fails to plead these putative predicates with sufficient particularity so as to survive Defendants' motions to dismiss. *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

### g. Unjust Enrichment

Manchanda's claim for unjust enrichment fails as well. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 236 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

As discussed above, Manchanda fails to plead that any of the Defendants benefited from their alleged wrongful conduct, and he certainly fails to plead any clear relationship between Defendants' profit and his injury. *See id.* ("To plead a plausible claim to relief on a theory of unjust enrichment, plaintiffs must show a causal nexus between a defendant's enrichment and their own expense that goes beyond mere correlation." (quoting *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 182 (E.D.N.Y. 2010))).

Moreover, an unjust enrichment cause of action is not permitted where it is duplicative of other avenues for relief, as is the case here with Manchanda's multiple overlapping claims. *See*

*Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). As such, Manchanda's unjust enrichment claim cannot survive Defendants' motions to dismiss.

### h. Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

In order to succeed on his claim for intentional infliction of emotional distress, a plaintiff must plead that Defendants, inter alia, engaged in "extreme and outrageous" behavior. *See Thomas v. EONY LLC*, No. 13 CIV. 8512, 2015 WL 1809085, at *6 (S.D.N.Y. Apr. 21, 2015) ("To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'" (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)). "And while the elements of *negligent* infliction of emotional distress differ from those required for the intentional tort, both require the same showing of outrageousness." *Gate Techs., LLC v. Delphix Capital Markets, LLC*, No. 12 CIV. 7075, 2013 WL 3455484, at *9 (S.D.N.Y. July 9, 2013) (citing *Sheila C. v. Povich*, 11 A.D.3d 120, 130-31 (N.Y. App. Div. 1st Dep't 2004)).

Manchanda has not shown that Defendants' allegedly injurious conduct here—namely, their aggregation and indexing of websites in their capacity as search engines—satisfies this high standard of outrageousness. *See id.* (requiring conduct to be "utterly intolerable in a civilized community" to rise to the level of outrageousness required to support a claim for intentional or negligent infliction of emotional distress). His claims for intentional and negligent infliction of emotional distress must be dismissed.

This dismissal does not speak to the legitimacy or severity of Manchanda's emotional distress—only that Manchanda has failed to plead facts sufficient for that distress to be remedied through these tort causes of action.

### 3.     Preclusion

Defendants Microsoft and Google also argue that Manchanda's claims are precluded by a previous New York State court judgment.  Manchanda views the previous state-court litigation differently, arguing that a restraining order in that action binds Defendants and requires them to remove the complained-of links—this claim also forms the basis for Manchanda's request for sanctions.

The doctrine of collateral estoppel provides that "an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies." *Constantine v. Teachers Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)).  To determine the preclusive effect of state court judgments, federal courts turn to the law of the state in which the judgment was rendered.  *Id.*  "In New York, collateral estoppel has two essential elements. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Id.* (quoting *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007)) (internal quotation marks omitted).  In the context of defensive collateral estoppel, "as long as the plaintiff 'had an opportunity to fully and fairly litigate an issue and lost,' then even 'third parties unrelated to the original action can bar the [plaintiff] from relitigating that same issue in a subsequent suit.'" *Muhammad v. Maduekwe*, No. 13 Civ. 6026, 2016 WL 829740, at *6 (S.D.N.Y. Feb. 29, 2016) (quoting *Austin v. Downs, Rachlin & Martin*, 114 F. App'x 21, 22 (2d Cir. 2004)).

13

As a threshold matter, the restraining order to which Manchanda refers does not bind the Defendants here. That order, issued in August 2013 by Justice Milton A. Tingling of the Supreme Court of New York, County of New York, stemmed from a suit between Manchanda Law Offices & Associates PLLC and "John Does 1-40," and related to website postings on a site called "Ripoff Report" mentioning Manchanda's name and his business's name. (Dkt. No 22-1 at 2.) Defendants here were not party to that litigation and did not have an opportunity to contest the Court's determination. (*Id.*) They are therefore not bound by that order.

However, a later judgment dismissing Manchanda's claims against Google and Microsoft does have preclusive effect here. When Manchanda sought a restraining order against Defendants Google and Microsoft and non-party Ripoff Report (though not against Defendant Yahoo) in state court in an attempt to enforce the August 2013 order, the same judge who had issued the restraining order, Justice Tingling, denied Manchanda's request and dismissed Manchanda's complaint for failure to state a claim. (Dkt. No. 20-3.) Justice Tingling found—as this Court has found here—that Google and Microsoft were immune from suit under Section 230 of the CDA, and that Manchanda did not state a claim for trademark infringement as there was no consumer confusion resulting from the use of his and his business's names by consumers posting on Ripoff Report. (*Id.* at 5.) The Court also noted that Google, Microsoft, and Ripoff Report were "conduits" for consumer commentary and "were not making the posting themselves." (*Id.*)

This later decision by Justice Tingling satisfies all of the requirements for collateral estoppel under New York law.[7] The rulings regarding CDA immunity and trademark non-

---

[7] Microsoft and Google also argue that to the extent Manchanda's instant claims arise from content posted on Ripoff Report, they are barred by the related doctrine of *res judicata*. (Dkt. No. 45 at 8; Dkt. No. 51 at 10 n.4.)

14

infringement were necessarily decided by Judge Tingling's opinion and also decide the claims here, in which Manchanda re-asserts nearly identical allegations. *See Constantine*, 448 F. App'x at 93. Moreover, Manchanda had the opportunity to fully and fairly litigate the issues in the prior proceeding, in which he was unsuccessful. *Id.* Because Manchanda's factual allegations here are duplicative of issues actually litigated and decided in the earlier state-court proceeding, they are barred by collateral estoppel as against all Defendants here. *See Wilder v. Thomas*, 854 F.2d 605, 621 (2d Cir. 1988) ("The central question is whether the plaintiffs have had their day in court . . . and the answer here is 'yes.'" (citation omitted)).

For the reasons discussed above, all of Manchanda's claims must be dismissed as they are preempted by the CDA, fail to state a claim, or are precluded by a previous state-court decision.

B. **Motion for Sanctions**

Manchanda also moves for sanctions for Defendants' alleged refusal to comply with Justice Tingling's restraining order. (Dkt. No. 26 at 1-2.)

"A party may be held in civil contempt for failure to comply with a court order only if: '(1) the order . . . is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Liberty Propane L.P. v. Feheley*, 522 F. App'x 38, 38–39 (2d Cir. 2013) (alteration in original) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).

In light of the dismissal of claims against Defendants Microsoft and Google by Justice Tingling, discussed above, Defendants were under no obligation to comply with the restraining order. (Dkt. No. 20-3.) Indeed, it is not clear and unambiguous that the order ever applied to them in the first instance, as they were not parties to the initial action. (Dkt. No 22-1.) As a

result, Manchanda has not carried his burden to justify sanctions against Defendants for their alleged noncompliance. Manchanda's motion for sanctions is denied.

### III. Conclusion

For the foregoing reasons, Defendant Yahoo's motion to dismiss is GRANTED, Defendant Microsoft's motion to dismiss is GRANTED, Defendant Google's motion to dismiss is GRANTED, and Plaintiff's motion for sanctions is DENIED.

The Clerk of Court is directed to close the motions at Docket Number 26, Docket Number 28, Docket Number 44, and Docket Number 50, and to close the case.

SO ORDERED.

Dated:  November 16, 2016
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*